## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

JESSE R. GILL,                               :
           Plaintiff,                    :
                              :
        v.                               :      C.A. No. 11-462ML
                              :
MICHAEL J. ASTRUE,                           :
COMMISSIONER OF SOCIAL SECURITY,             :
           Defendant.                   :


## REPORT AND RECOMMENDATION

Patricia A. Sullivan, United States Magistrate Judge

      This matter is before the Court on the Motion of Plaintiff Jesse R. Gill ("Plaintiff" or

"Mr. Gill") for reversal of the decision of the Commissioner of Social Security (the

"Commissioner"), denying benefits for disability insurance ("DIB") and Supplemental Security

Income ("SSI") under §§ 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g),

1383(c)(3) (the "Act").  Plaintiff, who was *pro se* throughout the process below, contends that

the decision of the administrative law judge ("ALJ") was infected by errors of law and not

supported by substantial evidence; through counsel he now seeks to reverse the decision of the

Commissioner.  Defendant Michael J. Astrue ("Defendant") has filed a Motion for an order

affirming the Commissioner's decision.

      This matter has been referred to me for preliminary review, findings, and recommended

disposition pursuant to 28 U.S.C. § 636(b)(1)(B).  I find that the Commissioner's determination

that Plaintiff is not disabled must be remanded for further proceedings because of the failure of

the ALJ to adequately discharge her duty to fully develop the record regarding the severity of

Plaintiff's anxiety disorder, a duty enhanced by Plaintiff's lack of counsel at the hearing, particularly in light of his marginal education and limited intellectual capacity. Accordingly, I recommend that Defendant's Motion to Affirm be denied and that Plaintiff's Motion to Reverse be partially granted, with a remand for further proceedings limited to the specific issue of the impact of Plaintiff's severe impairment of anxiety disorder on his residual functional capacity ("RFC").

## I.    **Background Facts**

Plaintiff Jesse R. Gill was born in 1982. Tr. 15, 91. He was twenty-five as of the alleged onset date of his disability on September 21, 2008. Id. He completed ninth or tenth grade in special education classes, Tr. 25, 123, but tested for reading and spelling at a second-grade level and sentence comprehension and math at a third-grade level. Tr. 184. While he scored "within normal limits" on the mini-mental status examination, his intelligence test scores revealed a full-scale IQ score of 70, with index scores of 76 on verbal comprehension, 65 on perceptual reasoning score, and 84 on processing speed. Tr. 182-183. His relevant diagnoses include borderline intelligence, complex partial epilepsy, which appears to respond to medication, anxiety, headaches and a tremor. Tr. 185, 209, 214. It is noteworthy that the various reports Plaintiff completed in connection with his application are virtually unintelligible. Tr. 125-142, 152-159.

Despite these deficits, Plaintiff had employment in a donut shop in 2007 and 2008, earning slightly more than $9,000 in both years; prior to 2007, he worked intermittently as a fast food cashier and food delivery driver, earning substantially less. Tr. 32, 102-104, 119. He testified that his last job before the onset of disability on September 21, 2008, ended because of an argument with his superior and that he can no longer work because his tremors got worse. Tr.

26, 32.  He also testified that he has been able to engage in a range of daily living activities, including caring for his young children while his wife worked, preparing simple meals, shopping, driving, chores and laundry.  Tr. 27-33.

The medical record reflects treatment notes of Plaintiff's primary care physician, Dr. Robert Cohen, over a period from September 2008 to September 2010.  Tr. 218-221.  Dr. Cohen recorded that Plaintiff reported headaches, episodes of dizziness and a tremor with his hands outstretched.  Tr. 219-221.  He treated the headaches with Imitrex and referred Plaintiff to neurologist Alla Korennaya, M.D., for a consult.  Tr. 212, 218.  Dr. Korennaya examined Plaintiff in June 2010 and continued to follow him through at least September 2010.  Tr. 208-217.  She opined that Plaintiff likely had a "benign familial essential tremor."  Tr. 214.  In connection with the potential seizure disorder, she scheduled an EEG, which "did not demonstrate any paroxysmal activity."  Tr. 211.  She also arranged for a brain MRI, which ruled out seizure focus and congenital cerebral malformation.  Tr. 215.  She diagnosed complex partial epilepsy, to be treated with Tegretol.  Tr. 211.  In September 2010, Dr. Korennaya noted that Plaintiff was "doing well on the current dose of Tegretol with borderline low Tegretol level.  As the patient is stable and spell-free, we will continue with current management."  Tr. 209.

## II.  Travel of the Case

On the applications that are the subject of this appeal, Plaintiff, proceeding *pro se*, alleged disability due to tremors, seizures, anxiety and a learning disorder.  Tr. 25, 26, 118.  He applied for DIB on August 12, 2009, Tr. 44, and SSI on August 21, 2009.  Tr. 45.  The Commissioner denied Plaintiff's claims initially and also upon reconsideration.  Tr. 48-51, 54-59.  Plaintiff then asked for a hearing before an ALJ, which request was granted on June 21, 2010.  Tr. 60-63.

On September 30, 2009, the Commissioner procured a consultative examination by psychologist Wendy Schwartz, Ph.D.  Tr. 178-186.  Dr. Schwartz performed a clinical interview and extensive testing.  Tr. 178.  Among other findings, she concluded that Plaintiff presented with symptoms consistent with anxiety disorder, NOS, and borderline intelligence.  Overall, she found functional limitations due to mild to moderate intellectual deficits and emotional issues; however, she also found that, occupationally, Plaintiff's ability to respond appropriately to customary work pressures appeared moderately to severely impaired.  Tr. 184-185.

In December 2009, a state agency psychiatrist, Dr. Rudnick, reviewed the evidence and prepared a Psychiatric Review Technique form and Mental Residual Functional Capacity Assessment.  Tr. 187-205.  He disagreed with Dr. Schwartz's conclusion regarding the severity of Plaintiff's occupational limitations and opined that Plaintiff's non-exertional limitations were moderate.  Tr. 187, 198.  His conclusions were affirmed by a state agency psychologist and physician.  Tr. 206-207.

At the hearing on May 26, 2011, a vocational expert and Plaintiff, appearing *pro se*, testified before ALJ Martha Bowers.  Tr. 21-37.  In a written decision dated June 8, 2011, the ALJ found that Plaintiff was not disabled under the Act.  Tr. 4-20.  The Appeals Council denied Plaintiff's request for review on August 31, 2011, thus making the ALJ's decision the final decision of the Commissioner subject to judicial review.  Tr. 1-3.  Plaintiff continued to prosecute these applications *pro se*, until this decision became final on August 31, 2011.  ECF No. 12 at 1.  He has engaged counsel in connection with this appeal.

Meanwhile back on October 1, 2004, when he was twenty-one, a prior application, apparently just for disability insurance, was allowed at the initial level; however, the record is devoid of any information regarding this application beyond the bare fact that an application was

allowed and that Plaintiff was terminated from benefits in February 2005 due to his failure to respond to a redetermination. Tr. 115-116. The record does not indicate whether he was represented in connection with this prior application. Tr. 115. Then, shortly after the unfavorable decision in this matter, on September 29, 2011, he filed a third time, again for both SSDI and SSI, this time with the assistance of counsel. ECF No. 12-1, Ex. A; ECF No. 12-3, Ex. C. While the instant appeal has been pending, these new applications were resolved in his favor at the initial level, with an alleged onset date of June 9, 2012, the first date not legally precluded by the ALJ's unfavorable decision here. ECF No. 12-3, Ex. C at 2. The subsequent finding of disability was based on the conclusion that his RFC is so limited by his "psych limitations" as to preclude even basic work. Id. at 10. Thus, the unfavorable decision that is the subject of this appeal is sandwiched between two favorable ones, albeit dealing with different periods of time.

**III.   <u>The ALJ's Hearing and Decision</u>**

At the outset of the hearing, the ALJ engaged Mr. Gill in a colloquy about his decision not to have a representative or legal advisor. Tr. 23-24. Plaintiff confirmed that he understood his right to be represented and that, prior to the hearing, he had received lists of organizations that would represent him free of charge unless he won his case. Tr. 24. He specifically confirmed that he did not wish to have a representative. Id.

Most of the hearing focused on Mr. Gill's daily activities. However, in response to questions, he made the ALJ aware that his primary treating physician was planning on further testing about the need for medication for anxiety, for which Mr. Gill testified he believed he needed counseling. Tr. 26-27, 30. He informed the ALJ that his follow-up appointment regarding "help for your anxiety" was scheduled to take place within a month. Id.

In her decision, the ALJ began with the finding that Plaintiff met the insured requirements of the Act through June 30, 2013.  She then proceeded through the familiar five-step inquiry to determine the merits of Plaintiff's claim.  After concluding that Plaintiff was not engaged in substantial gainful activity at Step One, she proceeded to Step Two, finding that Plaintiff had the severe impairments of a learning disorder, borderline intellectual functioning, an anxiety disorder and a likely seizure disorder.  Tr. 9.  With respect to the claim of tremor, she found a benign essential tremor that had not worsened over time, did not preclude work in the past, and had not interfered with a wide range of activities including caring for his children.  Tr. 10.

At Step Three, after careful consideration of the Listings related to seizures, and Listings 12.02 (Organic Mental Disorders) and 12.06 (Anxiety Disorders), the ALJ determined that Plaintiff's impairments did not meet or medically equal any of the listed impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 10.  In making this determination, she focused on the lack of any opinion concluding Plaintiff equaled a physical listing.  Id.  She noted his ability to ambulate and use his extremities, and the evidence of a mild restriction on activities of daily living, such as his ability to care for young children, to take medication with reminders, to perform self-care independently, to drive, do chores and laundry, to cook meals and shop.  Id.  She also noted moderate difficulties with social functioning and concentration, persistence and pace.  Tr. 11.

At Steps Four and Five, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that his statements concerning intensity, persistence and limiting effects of the symptoms were not credible to the extent that they were inconsistent with the state agency physician's assessment of RFC.  Tr. 13.

Without discussion of her reasoning, she disregarded the conclusion of Dr. Schwartz that

Plaintiff "was moderately to severely impaired" in "his ability to respond to customary work

pressures." Tr. 186. Instead, she accepted as entitled to "considerable weight" the opinion of

Dr. Rudnick, the state agency psychiatrist, that Dr. Schwartz's conclusion should be given less

weight. Tr. 13. As a result, she found that Plaintiff could perform a full range of work at all

exertional levels, but with the following non-exertional limitations:

> The claimant is unable to climb ladders, ropes or scaffolds; work at unprotected heights or work around dangerous equipment; has a "moderate" limitation in concentration, persistence, and pace such that he can understand, remember, and carry out simple 1-3 step tasks; and has a "moderate" limitation in social interactions such that he requires object-oriented tasks with only occasional and superficial work-related interactions with supervisors, co-workers, and the general public.

Tr. 11.

Based on her evaluation of Plaintiff's RFC, age, education, and vocational background,

and the testimony of the vocational expert, the ALJ found that, while Plaintiff could not perform

his past relevant work, he was not disabled because he could perform jobs existing in significant

numbers in the local and national economy. Tr. 15-16.

## IV.  <u>Issues Presented</u>

Plaintiff presents three arguments, which he contends establish that the decision of the

Commissioner that he is not disabled within the meaning of the Act, is not supported by

substantial evidence in the record and is infected by legal error:

> 1. The ALJ committed legal error in failing to elicit a knowing waiver of Plaintiff's
>
>    right to representation at the hearing before her on May 26, 2011.
>
> 2. The ALJ committed legal error in failing adequately to accommodate Plaintiff's
>
>    lack of counsel, limited intellectual capacity and minimal education by
>
>    developing the record regarding (i) Plaintiff's mental impairments, specifically

whether his impairments met the Listing for Mental Retardation (Listing 12.05);

(ii) Plaintiff's seizure disorder and tremors through consultation by a Medical

Source; and (iii) Plaintiff's non-exertional limitations through the services of a

Medical Advisor.

3.  The Court should remand the matter under Sentence Six of 42 U.S.C. § 405(g),

based on the submission of new and material information; specifically, the

subsequent initial decision in favor of Plaintiff for the period immediately

following this adverse determination.

**V.**      **Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence.

42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – that is, the evidence must do

more than merely create a suspicion of the existence of a fact, and must include such relevant

evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v.

Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v.

Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); Brown v. Apfel, 71 F.

Supp. 2d 28, 30 (D.R.I. 1999).  Once the Court concludes that the decision is supported by

substantial evidence, the Commissioner must be affirmed, even if the Court would have reached

a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health & Human Servs., 819

F.2d 1, 3 (1st Cir. 1987); see also Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991);

Lizotte v. Sec'y of Health & Human Services, 654 F.2d 127, 128 (1st Cir. 1981).

The determination of substantiality is based upon an evaluation of the record as a whole.

Brown, 71 F. Supp. 2d at 30; Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195

(1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider

evidence detracting from evidence on which Commissioner relied).  Thus, the Court's role in reviewing the Commissioner's decision is limited.  Brown, 71 F. Supp. 2d at 30.  The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner.  Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)).  "[T]he resolution of conflicts in the evidence is for the Commissioner, not the courts."  Id. at 31 (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)).  A claimant's complaints alone cannot provide a basis for entitlement when they are not supported by medical evidence.  See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21 (1st Cir. 1986); 20 C.F.R. § 404.1529(a).

The Court must reverse the ALJ's decision on plenary review, if the ALJ applies incorrect law, or if the ALJ fails to provide the Court with sufficient reasoning to determine that she properly applied the law.  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145-46 (11th Cir. 1991).  Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled.  Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) (citing Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985)).

The Court may remand a case to the Commissioner for a rehearing under Sentence Four of 42 U.S.C. § 405(g); under Sentence Six of 42 U.S.C. § 405(g); or under both sentences.  Jackson v. Chater, 99 F.3d 1086, 1097-98 (11th Cir. 1996).

To remand under Sentence Four, the Court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim.  Seavey, 276 F.3d at 9; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but

also was insufficient for district court to find claimant disabled).  Where the Court cannot discern

the basis for the Commissioner's decision, a Sentence Four remand may be appropriate to allow

her to explain the basis for her decision.  Freeman v. Barnhart, 274 F.3d 606, 609-10 (1st Cir.

2001).  On remand under Sentence Four, the ALJ should review the case on a complete record,

including any new material evidence.  Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983)

(necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council).  After

a Sentence Four remand, the Court enters a final and appealable judgment immediately, and thus

loses jurisdiction.  Freeman, 274 F.3d at 610.

> In contrast, Sentence Six of 42 U.S.C. § 405(g) provides:

> The court ... may at any time order additional evidence to be taken before the
> Commissioner of Social Security, but only upon a showing that there is new
> evidence which is material and that there is good cause for the failure to
> incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g).  To remand under Sentence Six, the claimant must establish: (1) that there is

new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that

there is a reasonable possibility that it would change the administrative result; and (3) there is

good cause for failure to submit the evidence at the administrative level.  See Evangelista v.

Sec'y of Health & Human Servs., 826 F.2d 136, 139-43 (1st Cir. 1987).  A Sentence Six remand

may be warranted, even in the absence of an error by the Commissioner, if new, material

evidence becomes available to the claimant.  Jackson, 99 F.3d at 1095 (citing Melkonyan v.

Sullivan, 501 U.S. 89, 98 (1991)). With a Sentence Six remand, the parties must return to the

Court after remand to file modified findings of fact.  Id.  The Court retains jurisdiction pending

remand and does not enter a final judgment until after the completion of remand proceedings.  Id.

## VI.   <u>Disability Determination</u>

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.   Developing the Record

In a case like this where the Court concludes that the Plaintiff knowingly and intelligently waived his right to be represented by counsel at the hearing, the ALJ's duty to fully and fairly develop the record is higher and requires that she develop the record more fully.  <u>Heggarty v. Sullivan</u>, 947 F.2d 990, 997 (1st Cir. 1991).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the administrative hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained.  <u>See</u> 42 U.S.C. § 406(c); <u>Evangelista</u>, 826 F.2d at 142.  The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  <u>Id.</u>  However, where an unrepresented claimant has waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  <u>See</u> <u>Heggarty</u>, 947 F.2d at 997 (citing <u>Currier v. Sec'y of Health, Educ. & Welfare</u>, 612 F.2d 594, 598 (1st Cir. 1980)).

**B.      Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986).  In fulfilling this duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  Carrillo Marin v. Sec'y of Health & Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

**C.      The Five-Step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments that significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  Id. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. Id. § 404.1520(e).  Fifth, if a claimant's impairments (considering her RFC, age, education and past work) prevent her from doing other work that exists in the local or national economy, then she is disabled.  Id. § 404.1520(f).  Significantly, the claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five.  Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five step process applies to both DIB and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments and must consider any medically severe combination of impairments throughout the disability determination process.  42 U.S.C. § 423(d)(2)(B).  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  <u>Davis v. Shalala</u>, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant must prove the existence of a disability on or before the last day of her insured status for the purposes of disability benefits.  <u>Deblois v. Sec'y of Health & Human Servs.</u>, 686 F.2d 76, 79 (1st Cir. 1982); 42 U.S.C. §§ 416(i)(3), 423(a), 423(c).  If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability.  <u>Cruz Rivera v. Sec'y of Health & Human Servs.</u>, 818 F.2d 96, 97 (1st Cir. 1986).

**D.      Capacity to Perform Other Work**

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the local or national economy.  <u>Seavey</u>, 276 F.3d at 5.  To meet this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant.  <u>Allen v. Sullivan</u>, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be met through reliance on the Medical-Vocational Guidelines (the "grids").  <u>Seavey</u>, 276 F.3d at 5.  Exclusive reliance on the grids is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.  <u>Id.</u> (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).  Exclusive reliance is not appropriate

13

when a claimant is unable to perform a full range of work at a given RFC or when a claimant has

a non-exertional impairment that significantly limits basic work skills. <u>Nguyen</u>, 172 F.3d at 36.

In almost all of such cases, the Commissioner's burden can be met only through the use of a

vocational expert. <u>Heggarty</u>, 947 F.2d at 996. It is only when the claimant can clearly do

unlimited types of work at a given RFC that it is unnecessary to call a vocational expert to

establish whether the claimant can perform work which exists in the national economy. <u>See</u>

<u>Ferguson v. Schweiker</u>, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a

specific finding as to whether the non-exertional limitations are severe enough to preclude a wide

range of employment at the given RFC indicated by the exertional limitations. <u>Merola v. Astrue</u>,

C.A. No. 11-536A, 2012 WL 4482364, at *5 (D.R.I. Sept. 26, 2012).

### E. Making Credibility Determinations

Where an ALJ decides not to credit a claimant's testimony, the ALJ must articulate

specific and adequate reasons for doing so, or the record must be obvious as to the credibility

finding. <u>See</u> <u>Da Rosa v. Sec'y of Health & Human Servs.</u>, 803 F.2d 24, 26 (1st Cir. 1986);

<u>Rohrberg v. Apfel</u>, 26 F. Supp. 2d 303, 309-10 (D. Mass. 1998). A reviewing court will not

disturb a clearly articulated credibility finding with substantial supporting evidence in the record.

<u>See</u> <u>Frustaglia</u>, 829 F.2d at 195.

A lack of a sufficiently explicit credibility finding becomes a ground for remand when

credibility is critical to the outcome of the case. <u>See</u> <u>Smallwood v. Schweiker</u>, 681 F.2d 1349,

1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility

determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such

testimony or the implication must be so clear as to amount to a specific credibility finding."

<u>Foote v. Chater</u>, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting <u>Tieniber v. Heckler</u>, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## VII.   <u>Application and Analysis</u>

### A.   <u>Sufficiency of Waiver of Right to Counsel</u>

Plaintiff argues that the ALJ committed legal error in that she did not elicit a knowing waiver of his right to counsel at his hearing.  In marshaling this argument, Plaintiff focuses narrowly on the colloquy with the ALJ at the commencement of the hearing.  Tr. 23-24.  This argument discounts the several written notices from the Commissioner advising him of his right to counsel by pointing to the significant evidence in the record of Mr. Gill's limited ability to read and comprehend.  <u>See</u> Tr. 62-63, 64-66, 68, 71-72 (notices of right to counsel).

The Act is clear that the Commissioner must notify claimants in writing of the "options for obtaining attorneys to represent [them] in presenting their cases before the Commissioner of Social Security" and the "availability to qualifying claimants of legal service organizations which provide legal services free of charge."  42 U.S.C. § 406(c).  However, this statutory right to counsel "'falls well below the Sixth Amendment threshold' applicable in criminal cases. . . . Claimants may, following sufficient notification of the right to counsel, waive the right by intelligently deciding to proceed *pro se*."  <u>Mandziej v. Chater</u>, 944 F. Supp. 121, 130 (D.N.H. 1996) (citing <u>Evangelista</u>, 826 F.2d at 142).  A determination of the adequacy of the notice of the right to counsel involves a common sense review of the relevant communications.  <u>See</u> <u>Rusek v. Astrue</u>, C.A. No. 06-38ML, 2008 WL 4449654, at *4 (D.R.I. Sept. 30, 2008).

Here, the first communication about his right to counsel followed Plaintiff's request for a hearing before an ALJ, when the Commissioner sent him a Hearing Acknowledgment Notice

dated June 21, 2010, which contained a section entitled "Your Right To Representation" (Tr.

62).[1]  The notice states in pertinent part:

> You may choose to be represented by a lawyer or other person. A representative
> can help you get evidence, prepare for the hearing, and present your case at the
> hearing. If you decide to have a representative, you should find one immediately
> so that he or she can start preparing your case.
>
> Some private lawyers charge a fee only if you receive benefits. Some
> organizations may be able to represent you free of charge. Your representative
> may not charge or receive any fee unless we approve it. We are enclosing a list of
> groups that can help you find a representative.

Tr. 62.  Appended to the notice was a detailed Social Security publication further explaining the

right to representation along with a directory of organizations that Plaintiff could contact to

obtain legal representation.  Tr. 64-66.

On April 1, 2011, the Commissioner sent Plaintiff the Notice of Hearing, which advised

him that, "If you want to have a representative, please find one right away.  If you get a

representative, you should show this notice to that person."  Tr. 68.  Appended to the Notice of

Hearing was another copy of "Your Right To Representation."  Tr. 71-72.  Significantly,

Plaintiff was able to effectively comprehend the portions of this notice that informed him of the

date, place and time for his hearing, in that he appeared on time and prepared to participate.  See

Tr. 23, 67.

These written notices were supplemented by the ALJ's questions of Plaintiff prior to

commencing the hearing as follows:

> ALJ: When we notified you of the hearing we also notified you that you
> had the right to be represented by an attorney or a non attorney. Do you
> understand that?

---

[1] The Commissioner had already twice notified Plaintiff of his right to representation and the resources available for
obtaining such representation when he denied Plaintiff's claim at the initial and reconsideration levels.  Tr. 49, 54,
57-58.

Claimant: Yes, ma'am.

ALJ: And we sent you some paperwork with some lists of organizations that would represent you free of charge unless you won your case. Did you understand that?

Claimant: Yes, ma'am.

ALJ: And I see that you're not represented today. Did you wish to have a representative?

Claimant: No.

ALJ: Very well. Then we will proceed.

Tr. 23-24.

This colloquy is essentially the same as that found adequate in <u>Rusek</u>, 2008 WL 4449654, at *5, a case that also involved a plaintiff with limited language comprehension.[2] Coupled with the written notices, it more than satisfies the notice requirements of the Act and the waiver requirements of the First Circuit.  <u>See, e.g.</u>, <u>Evangelista</u>, 826 F.2d at 142; <u>Mandziej</u>, 944 F. Supp. 130.

The Court finds that there was no inherent unfairness in the ALJ's decision to allow Plaintiff his right to remain *pro se* as he wished.  <u>Evangelista</u>, 826 F.2d at 143; <u>see</u> <u>Rusek</u>, 2008 WL 4449654, at *4 (absence of counsel not inherently unfair as long as notification sufficient). The transcript demonstrates that Plaintiff voluntarily waived his right to representation at the hearing; there is nothing to indicate that he was in any way misled.  <u>See</u> <u>Ramirez v. Sec'y of Health, Educ. & Welfare</u>, 528 F.2d 902, 903 (1st Cir. 1976); <u>Steward v. Barnhart</u>, 222 F. Supp. 2d 60, 62-63 (D. Me. 2002); <u>Rizan v. Sec'y of Health & Human Servs.</u>, No. 94-275-SD, 1994 WL 759254, at *4 (D.N.H. Nov. 23, 1994).  He seemed comfortable with his self-representation

---

[2] Plaintiff incorrectly characterizes <u>Rusek</u> as a case involving a claimant with no language limitations.  ECF No. 12, at 5.  In fact, like Mr. Gill, the <u>Rusek</u> plaintiff argued that his language limitations might have impaired his ability to understand the implications of representation and the waiver of that right.  <u>Rusek</u>, 2008 WL 4449654, at *5.

and gave coherent and responsive answers.  The ALJ paused several times to allow him the

opportunity to review the medical records and to confirm that the record was complete.  Tr. 24,

33, 37.  Cf. Sims v. Harris, 631 F.2d 26, 27-28 (4th Cir. 1980) (remand ordered where lawyerless

claimant "confused" and her testimony "directionless and generally incoherent").

     The ALJ did not err in accepting Plaintiff's waiver of his right to be represented by

counsel at the hearing.

### B.     ALJ's Duty to Develop the Record When Plaintiff is Unrepresented[3]

     In addition to arguing that the waiver was facially inadequate, Plaintiff also contends that

the ALJ committed legal error in failing adequately to accommodate his lack of counsel, limited

intellectual capacity and minimal education by developing the record regarding (i) Plaintiff's

mental impairments, specifically whether his impairments met the Listing for Mental Retardation

(Listing 12.05); (ii) Plaintiff's seizure disorder and tremors through consultation by a Medical

Source; and (iii) Plaintiff's non-exertional limitations through the services of a Medical

Advisor.[4]

---

[3] The First Circuit has consistently declined to establish a formula for how to procure a knowing waiver of the right to counsel.  Rather, it has accepted a common sense approach, which requires proof of prejudice or unfairness attributable to self-representation in order to warrant remand.  Evangelista, 826 F.2d at 143.  The point is not whether the claimant handled the matter as well as his current counsel might have done; rather, the point is that he was able to present his case adequately, and that the ALJ was sufficiently forthcoming to meet the attendant burden to develop the record adequately.  Id. at 142.  Some decisions focus on the "fairness" issue as integral to the examination of the adequacy of the waiver, Evangelista, 826 F.3d at 143; Rusek, 2008 WL 4449654, at *4, while others assume the adequacy of the waiver, but focus on the ALJ's heightened duty to develop the record once the waiver is accepted from an applicant who is intellectually or mentally limited.  See, e.g., Heggarty, 947 F.2d at 997-98; DeBlois, 686 F.2d 76, 80-81.  This is a difference without distinction.  The ALJ is not tasked with a formulaic waiver protocol, but rather with conducting a fair hearing.  Figueroa, 585 F.2d at 553-54 (pro se claimant's argument of lack of adequate waiver of right to counsel dismissed as frivolous, but matter remanded for development of the record on a medical issue raised but not addressed by the ALJ).

[4] Plaintiff asserted a related argument that he was prejudiced due to the ALJ's misclassification of his educational attainments as "limited" instead of "marginal."  Because this argument was asserted in support of his contention that his education was insufficient to permit a knowing waiver, it is not further discussed except to note that the Court's conclusion that the ALJ had an affirmative duty to develop the record reflects Plaintiff's education and intellectual capacity.

It is a long recognized truism that social security proceedings "are not strictly adversarial." Miranda v. Sec'y of Health, Educ. & Welfare, 514 F.2d 996, 998 (1st Cir. 1975). Courts in this Circuit have made few bones about the responsibility that the Commissioner bears for adequate development of the record. Evangelista, 826 F.2d at 142; see Deblois, 686 F.2d at 80-81; Currier, 612 F.2d at 598. This responsibility increases when the applicant is bereft of counsel. Id.; see also Bomes v. Schweiker, 544 F. Supp. 72, 76 (D. Mass. 1982).

Having accepted Plaintiff's facially knowing waiver of his right to counsel, the ALJ undertook a greater duty to develop the record. Heggarty, 947 F.2d at 997-98. Where a *pro se* Plaintiff suffers from an obvious limited ability to comprehend, fairness dictates that the ALJ must undertake to protect his interests at the hearing. Deblois, 686 F.2d at 81; see also Evangelista, 826 F.2d at 143 (remand for want of representation is necessitated where there is a showing of unfairness or prejudice). While in most instances the Commissioner need proceed no further when the claimant fails to establish a sufficient claim of disability, the ALJ's responsibility to develop the record increases where the plaintiff is unrepresented, where the claim seems substantial, where there are material gaps in the evidence, and where it is within the power of the ALJ to fill the gaps by obtaining additional medical records or requesting further assistance from a psychiatrist. DeBlois, 686 F.2d at 80-81. This is particularly true with respect to the determination of the plaintiff's RFC, which affects Step Five, where the burden has shifted to the Commissioner to show other jobs in the local and national economy that the plaintiff could perform. Heggarty, 947 F.2d at 997-98 (ALJ's obligation to develop the record is strengthened when applicant is *pro se*, especially once the burden has shifted).

Plaintiff's arguments that the ALJ should have developed the record by further focus on whether he met the Listing for mental retardation and by consultation with a medical source

regarding his seizures and tremors both fail because he has not offered any proof that, had she

done so, it would have altered the result.  Reynolds v. Astrue, No. 07-5-B-W, 2007 WL

3023573, at *2 (D. Me. Oct. 12, 2007).  Rather, Plaintiff's contentions anent these matters seem

more like speculation than a demonstration of the kind of prejudice caused by lack of counsel

sufficient to justify remand.  Rusek, 2008 WL 4449654, at *8.

The ALJ's implicit[5] conclusion that Plaintiff did not meet the requirements of Listing

12.05 (Mental Retardation) is amply supported by the substantial evidence in the record.

Rodriguez Pagan, 819 F.2d at 3; Lizotte, 654 F.2d at 128.  All physicians who reviewed the

evidence classified Plaintiff as borderline, including Dr. Schwartz, who performed the IQ testing

that yielded a performance score slightly below the borderline range.  Tr. 183-85 (Dr. Schwartz)

(scores indicate borderline intelligence); Tr. 187 (Dr. Rudnick) (borderline intellectual

functioning); Tr. 206 (Dr. Litchman) (adopting findings as written).  See Cox v. Astrue, 495 F.3d

614, 618 (8th Cir. 2007) (no error in relying on diagnosis of borderline intelligence, despite full

scale IQ and all subtest scores in mental retardation range); Bard v. Astrue, No. 10-220-JAW,

2011 WL 2559534, at *4-5 (D. Me. June 27, 2011) (same).  The ALJ did not err in accepting this

evidence, which was confirmed by Plaintiff's testimony regarding his ability to care for himself

and his children.[6]  Tr. 27-29, 30-31.

Similarly, Plaintiff's contention that the ALJ should have sought further consultation

regarding the seizure disorder and tremors is entirely speculative – the record is well-developed

in that Plaintiff's treating neurologist Dr. Korennaya's notes demonstrate that she was following

---

[5] No source references consideration of Listing 12.05, or opines that Plaintiff is mentally retarded.

[6] Ironically, Plaintiff's new evidence of the subsequent favorable determination would appear to confirm the ALJ's failure to focus on Listing 12.05.  While the record presented is skimpy, it appears that, for the time period covered by that determination, Plaintiff was diagnosed as borderline and Listing 12.05 was not considered.  ECF No. 12-3 at 5-6.

him for both the tremor and an underlying seizure disorder.  Tr. 208-217.  She assessed Plaintiff

as stable and seizure free on a relatively low dose of Tegretol and diagnosed his tremor as a

"benign familial essential tremor."  Tr. 209, 214.  All of the other record evidence confirmed that

the seizure disorder was well-managed with medication.  Tr. 14-15 (ALJ summary of evidence

regarding potential seizures).  Such a remediable impairment may not be the basis for a

disability.  Harris v. Heckler, 756 F.2d 431, 435-36 n.2 (6th Cir. 1985); Figueroa v. Sec'y of

Health, Educ. & Welfare, 585 F.2d 551, 553 (1st Cir. 1978) (epilepsy, when controlled by

medication, is not itself disabling).  In light of this evidence, the ALJ permissibly found that

Plaintiff lacked credibility when he testified that his tremor precluded any work.  Tr. 13.  Thus,

Plaintiff has failed to establish prejudice caused by lack of counsel sufficient to justify remand

arising from the ALJ's failure to consult with a medical source regarding the seizure disorder or

the tremor.

       In stark contrast, the ALJ's decision not to further develop the record regarding the

occupational impact of Plaintiff's emotional deficits does establish the level of unfairness that

warrants remand.  Plaintiff's testimony alerted the ALJ to the fact that Dr. Cohen, his primary

care physician, had recommended further testing so he could get help for anxiety; indeed, Mr.

Gill told the ALJ that he had an appointment upcoming soon regarding anxiety.  Tr. 26, 30.

When the ALJ asked Mr. Gill if he had sought counseling for anxiety, he testified, "I don't

know.  I should."  Tr. 30.  Critically, the consulting psychologist, Dr. Schwartz, who performed

an extensive evaluation of Mr. Gill, diagnosed "Anxiety Disorder, NOS" and concluded:

"[o]ccupationally, his ability to respond appropriately to customary work pressures, colleagues,

and supervisors appears to be moderately to severely impaired."  Tr. 185 (emphasis added).  She

recommended a "[f]ull review of any medical records," and a "[p]sychiatric referral to determine

how psychotropic and/or psychotherapeutic intervention will be beneficial for this patient at this time." Tr. 186.  In response to an alternative hypothetical,[7] the vocational expert who testified at the hearing confirmed that the severity of the occupational limitation identified by Dr. Schwartz would result in a finding of disability:

> Q If the individual had a moderately severe limitation in . . . the ability to respond appropriately to customary work pressures, how would that affect your answer?
>
> A Then I would say that they would be unable to perform any jobs in significant numbers in the local and national economy.

Tr. 36.  This answer puts beyond cavil the prejudice to Plaintiff caused by the ALJ's error.

Instead of either accepting Dr. Schwartz, an examining consultant, or attempting to further develop the record regarding the impact of Plaintiff's anxiety disorder, with no explanation why, the ALJ simply disregarded Dr. Schwartz's interpretation of her own testing by incorrectly characterizing the examining consultant's conclusions as consistent with the non-examining sources.[8]  See Dioguardi v. Comm'r of Soc. Sec., 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006) (legal error for ALJ, without explanation, to create an RFC assessment that conflicts with medical source statements); cf. Shaughnessy v. Astrue, C.A. No. 09-246ML, 2010 WL 1626491, at *8 (D.R.I. Mar. 30, 2010) (ALJ is required to give good reasons for inconsistency between a treating physician's opinion and an RFC assessment).  The ALJ gave considerable weight to the opinion of Dr. Rudnick, the non-examining state agency psychiatrist,

---

[7] The ALJ's primary hypothetical, on which she relied in finding no disability, ignored Dr. Schwartz's conclusion regarding occupational limitations.

[8] The ALJ's decision entirely omits any reference to Dr. Schwartz's critical conclusion that Plaintiff's anxiety was a severe non-exertional occupational limitation, despite the inclusion of this limitation in the alternative hypothetical she posed to the vocational expert. Tr. 36. Instead, the decision states, "Dr. Schwartz diagnosed an anxiety disorder NOS . . . which indicates moderate psychiatric limitations consistent with the hypothetical by the Administrative Law Judge and the findings of non-examining sources." Tr. 14. This statement is simply incorrect. The findings of the non-examining source to whom she refers are not consistent with Dr. Schwartz's conclusion. To the contrary, Dr. Rudnick expressly discounted Dr. Schwartz's findings in order to reach his different conclusion regarding Plaintiff's residual functions: "Mss. from the consulting psychologist is given less weight." Tr. 187. The other non-examining sources concurred with Dr. Rudnick. Tr. 206-207. Similarly, the hypothetical on which the ALJ relied in her decision is not consistent with Dr. Schwartz's opinion. The alternative hypothetical is consistent, but it is disregarded in the decision.

who opined that Dr. Schwartz's conclusion should be given less weight as "not wholly consistent with mental status findings."  Tr. 13, 187.  The ALJ further found that, "claimant's reports of depression or anxiety are not entirely credible as he has no psychiatric treatment and is on no psychiatric medication."  Tr. 15.

With a *pro se* claimant suffering from borderline intelligence and marginal education, it was error for the ALJ to have rejected Dr. Schwartz's opinion without developing the record by gathering additional information from a psychiatric medical source regarding the severity of Plaintiff's anxiety disorder, as both Dr. Schwartz and Dr. Cohen had recommended.  Bard v. Soc. Sec. Admin. Comm'r, 736 F. Supp. 2d 270, 278 (D. Me. 2010) (absence of substantial evidence in support of a Step Four RFC finding undermines the Commissioner's ability to carry his Step Five burden).  The error is particularly egregious here because the ALJ not only ignored without explanation an examining source, but also gave considerable weight to inconsistent non-examining physicians in reaching her RFC assessment.  Polanco-Quinones v. Astrue, 477 F. App'x 745, 748 (1st Cir. 2012) (per curiam) (ALJ's apparent reliance on non-examining physicians without explanation is error requiring remand); Penny v. Sullivan, 2 F.3d 953, 957 (9th Cir. 1993) (ALJ's sole reliance on an opinion from a non-examining physician with respect to subjective symptoms is error requiring remand); 20 C.F.R. § 404.1527(c)(1) (more weight should be given to examining source than non-examining source).

While an ALJ may derive substantial evidence from the advisory reports of non-examining physicians, the weight to be given to them in this Circuit depends on the circumstances, including the nature of the illness and the information provided to the expert.  Berrios Lopez v. Sec. of Health & Human Servs., 951 F.2d 427, 431 (1st Cir. 1991) (per curiam) (not error for ALJ to rely on non-examining reports where they were consistent with the report of

the physician who performed the consulting examination and were almost the same as the opinion of the treating physician).  In this case, the illness is a psychiatric diagnosis of anxiety, the claimant is both intellectually limited and *pro se*, and the only qualified professional[9] to examine Mr. Gill made a finding of severe limitation.  The circumstances here are very different from those in <u>Berrios</u>; the ALJ's unexplained decision to give considerable weight to the non-examining sources whose conclusion is contrary to that of the examining consultant is error.  <u>See id.</u>

 Plaintiff has demonstrated that his lack of representation resulted in clear prejudice based on the gaps in this evidence that could readily have been filled by ordering further or more complete reports.  <u>Evangelista</u>, 826 F.2d at 142-43; <u>Currier,</u> 612 F.2d at 598.  Like the claimant in <u>Deblois</u>*,* 686 F.2d at 80-81, where the ALJ's failure to develop the record of a mentally impaired *pro se* plaintiff constituted a sufficient basis for remand, Plaintiff here may have been denied benefits due to the lack of a psychiatric consultation regarding the severity of his anxiety disorder.  <u>Rivera-Torres v. Sec'y of Health & Human Servs.</u>, 837 F.2d 4, 6-7 (1st Cir. 1988).  Where this error affected the ALJ's analysis of RFC at Step Five, the stage at which the burden shifts to the Commissioner, remand for further proceedings is particularly appropriate.  <u>Heggarty</u>, 947 F.2d at 997-98 (where record devoid of evidence on extent of claimant's eczema, which limned the range of sedentary work he could do, remand is particularly appropriate because it affects an issue on which the Secretary has the burden).

 The Court therefore concludes that a sufficient basis has been shown for remand for the limited purpose of ascertaining whether Plaintiff can present additional evidence bearing on

---

[9] The record reflects that Mr. Gill had been referred for follow-up regarding anxiety, but he had no treating psychiatrist or psychologist.  <u>See</u> Tr. 26, 30.  Dr. Schwartz, a psychologist, performed her examination as a consultant requested by the ALJ.

whether his anxiety disorder was of disabling severity, as Dr. Schwartz concluded.  See Seavey, 276 F.3d at 13; Deblois, 686 F.2d at 81.

### C.   Remand for Consideration of New Evidence of Subsequent Favorable Determination

Sentence Six provides that the Court may "at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  42 U.S.C. § 405(g).  Evidence is "material" only if the Commissioner's decision "might reasonably have been different" had he had the opportunity to consider the evidence.  Evangelista, 826 F.2d at 140.  Essential to the materiality requirement is that the new evidence relate to the time period for which benefits were denied; evidence reflecting a later-acquired disability or the subsequent deterioration of a previous non-disabling condition is not material.  Gullon ex rel. N.A.P.P. v. Astrue, No. 11-099ML, 2011 WL 6748498, at *10 (D.R.I. Nov. 30, 2011) (quoting Beliveau ex rel. Beliveau v. Apfel, 154 F. Supp. 2d 89, 95 (D. Mass. 2001) ("To be material, the evidence must be both relevant to the claimant's condition during the time period for which benefits were denied and probative.")).  The plaintiff bears the burden of demonstrating that a piece of new evidence is material.  See Evangelista, 826 F.2d at 139.

The majority of courts have consistently held that a subsequent allowance for a different time period, albeit one that follows closely upon the time period at issue, does not constitute new and material evidence under 42 U.S.C. § 405(g).  See, e.g., Allen v. Comm'r of Soc. Sec., 561 F.3d 646, 653 (6th Cir. 2009) ("Under sentence six, the mere existence of [a] subsequent decision in [the claimant's] favor, standing alone, cannot be evidence that can change the outcome of his prior proceeding."); Jirau v. Astrue, 715 F. Supp. 2d 814, 825-26 (N.D. Ill. 2010).

These courts conclude that it is mere speculation to assume, based solely on proximity in time, that the subsequent application contains favorable evidence bearing on the original application. See, e.g., Henriquez v. Astrue, 499 F. Supp. 2d 55, 58 (D. Mass. 2007). Because a subsequent determination addresses a different time period, it offers no new facts of any relevance. Evangelista, 826 F.2d at 140 n.3. Even if, as here, the subsequent allowance finds the claimant disabled as of the day after the date of the decision on appeal, it is not material. Allen, 561 F.3d at 653. "The mere fact that a second [decision-maker] weighed the evidence differently does not authorize reversal by a district court; the standard is whether the first ALJ's decision was supported by substantial evidence on the record, not whether it was the only possible reasonable decision." Perry v. Astrue, C.A. No. 10-11004-DPW, 2012 WL 645890, at *11 (D. Mass. Feb. 27, 2012).

Plaintiff relies primarily on a contrary perspective in Luna v. Astrue, 623 F.3d 1032 (9th Cir. 2010). However, Luna has been rejected by most of the district courts that have considered this question. See Perry, 2012 WL 645890, at *12 (citing cases). This Court finds its reasoning unpersuasive.

In sum, Plaintiff has failed to sustain his burden of demonstrating that the evidence of the subsequent favorable determination is new and material so as to justify remand under Sentence Six.

**VIII.  <u>Conclusion</u>**

The Court finds that the ALJ's acceptance of Plaintiff's waiver of his right to representation was not error and that the new evidence pertaining to a subsequent favorable finding of disability is not material. However, the Court also finds that the ALJ's failure to further develop the record was an error of law giving rise to remand for further proceedings

pursuant to Sentence Four of 42 U.S.C. § 405(g).  Accordingly, I recommend that Plaintiff's

Motion to Reverse (Pl.'s Mot. for Reversal of Dec. Comm'r, ECF  No. 9) be GRANTED, with a

remand for the limited purpose of developing the record with respect to the effect of Plaintiff's

anxiety disorder on his RFC, that Defendant's Motion to Affirm (Def.'s Mot. for Order Aff'g

Dec. Comm'r,  ECF No. 10) be DENIED, and that final judgment enter in favor of Plaintiff.

Any objections to this Report and Recommendation must be specific and must be filed

with the Clerk of Court within fourteen (14) days after the date of service.  <u>See</u> Fed. R. Civ. P.

72(b); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver

of the right to review by the district court and of the right to appeal the district court's decision.

<u>See</u> <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986); <u>Park Motor Mart, Inc. v.</u>

<u>Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).

<u>/s/ Patricia A. Sullivan</u>
PATRICIA A. SULLIVAN
United States Magistrate Judge
November 26, 2012